UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELZIE BIBBS, | No. 2:25-cv-01443-DJC-CSK |
| Plaintiff, | |
| v. | ORDER |
| RAISING CANE'S USA, L.L.C., et al., | |
| Defendants. | |

Plaintiff Elzie Bibbs originally filed the present suit in Sacramento County Superior Court against his former employer, Defendant Raising Cane's USA, L.L.C., and two Raising Cane's human resources employees, Defendants Danielle Hilton and Marlene McCullah.[1]  Plaintiff's list of claims was lengthy, but the core factual allegations concerned events occurring after Plaintiff's arrest on February 23, 2025. Plaintiff claims that Defendants retaliated against him due to his arrest and that Defendants improperly utilized his arrest as grounds to place him on unpaid leave and ultimately terminate him.

---

[1] In Plaintiff's Complaint, Plaintiff stated that he was unaware of Defendant McCullah's last name, referring to them as "Defendant Marlene" instead.  Defendants represent that Marlene's last name is McCullah.  (Notice of Removal (ECF No. 1) at 1.)  As such, this order shall refer to this defendant as Defendant McCullah.

1

Defendants subsequently removed this action, asserting this Court had diversity of citizenship as Defendants Hilton and McCullah were sham defendants. (Notice of Removal at 5.) Plaintiff has now filed a motion requesting that the Court remand this action to the Sacramento County Superior Court. (ECF No. 6.) Defendants have separately moved to compel arbitration under an arbitration agreement that Plaintiff signed which covers the claims at issue. (ECF No. 7.)

For the reasons stated below, Plaintiff's Motion to Remand is granted, and Defendants' Motion to Compel Arbitration is denied as moot.

## BACKGROUND

Plaintiff alleges that on February 23, 2025, while he was employed at Defendant Raising Cane's, Plaintiff was pulled over by an officer on his way to work. (Compl. (ECF No. 1-1, Ex. B) ¶ 10.) Plaintiff continued to drive until he reached his workplace, at which time the officer arrested Plaintiff and took him into custody. (*Id.* ¶¶ 11–12.) Plaintiff was charged with evading but was released from custody later that same morning. (*Id.* ¶¶ 11–13.) Plaintiff requested to return to work the same day, but was told that he was not allowed to come in. (*Id.* ¶ 14.) Defendant Hilton subsequently placed Plaintiff on an unpaid leave of absence until the pending charges were "resolved" and until Plaintiff provided Defendant Hilton with paperwork that had the date of Plaintiff's arrest, the crimes he was charged with, and his next court date. (*Id.* ¶ 15.) Plaintiff claims that the next day, he attempted to provide Defendants Hilton and McCullah with paperwork, but Defendants rejected the documentation because it did not show Plaintiff's charges and next court date on the same piece of paper. (*Id.* ¶ 17.) Plaintiff complained that he was being retaliated against because of charges unrelated to his job. (*Id.* ¶ 18.) Plaintiff alleges that when he attempted to provide additional paperwork on February 27, 2025, Defendants also rejected it as insufficient. (*Id.* ¶ 20.) Plaintiff states that the following day, he went to the District Attorney's Office, where an Assistant District Attorney stated they could not provide him with the necessary paperwork and attempted to speak with Defendant Hilton over the phone.

(*Id.* ¶ 21.) Plaintiff alleges that when he finally managed to get paperwork that complied with Defendants' request, he was told that he could not return to work until the pending charges were resolved. (*Id.* ¶ 23.) Plaintiff claims that he was terminated on March 7, 2025, and that Defendant Hilton informed him that he was terminated because the charges were "taking longer than expected" to be resolved. (*Id.* ¶ 24.) Plaintiff states that the pending charges were dropped on April 2, 2025. (*Id.* at 6 n.1.)

Plaintiff brought fourteen claims against Defendant Raising Cane's, some concerning these events specifically, but also some related to unrelated wage and hour claims. Two of those claims, Plaintiff's Thirteenth Cause of Action and Fourteenth Cause of Action for Intentional and Negligent Infliction of Emotional Distress, respectively, are brought against Defendants Hilton and McCullah. (*Id.* at 17–19.)

Briefing is complete on both Plaintiff's Motion to Remand (Remand Mot. (ECF No. 6); Remand Opp'n (ECF No. 10); Remand Reply (ECF No. 12)) and Defendants' Motion to Compel Arbitration (Arbitration Mot. (ECF No. 7); Arbitration Opp'n (ECF No. 11); Arbitration Reply (ECF No. 13)). The matter was submitted without oral argument pursuant to Local Rule 230(g). (ECF No. 14.)

## MOTION TO REMAND[2]

### I. Legal Standard

A case may be removed to federal court if that court would have original jurisdiction over the matter, which generally requires asserting federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). "However, it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party

---

[2] Defendant initially argues in their Opposition that Plaintiff's Motion to Remand should be denied for failure to meet and confer. (Remand Opp'n at 8.) While the Court strongly encourages the parties to meet and confer, it does not appear that meet and confer efforts would have ultimately been effective here. Additionally, given the Court ultimately finds that it lacks jurisdiction, it is important to address Plaintiff's Motion now.

3

asserting jurisdiction." *Hunter*, 582 F.3d at 1042 (quoting *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (citation omitted)) (internal quotation marks and alterations omitted). As a result, "[t]he 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) (internal quotation marks omitted)).

Under the doctrine of "fraudulent joinder" or "sham defendant," a federal court may ignore a non-diverse defendant's citizenship if either of two stringent standards are met: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *See Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting Hunter, 582 F.3d at 1044–46 (citations omitted)). Defendants challenge the joinder of Defendants Hilton and McCullah on the second basis, which requires Defendants to show there is no possibility that a state court would find that the Complaint states a cause of action against these Defendants. *See id.* (quoting *Hunter*, 582 F.3d at 1046). Defendants "bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" *Grancare*, 889 F.3d at 548 (quoting *Hunter*, 582 F.3d at 1046) (alteration included).

Establishing an inability to state a cause of action against the non-diverse defendant requires more than showing that the claim does not meet the standards for a motion to dismiss under Rule 12(b)(6). Rather, the court must determine "[whether] there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003)) (emphasis added); *Grancare*, 889 F.3d at 549–50 ("A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined."). "Consequently, if a defendant simply argues that plaintiff has not pled sufficient facts

4

to state a claim, the heavy burden of showing fraudulent joinder has not been met." *Ontiveros v. Michaels Stores, Inc.*, No. 12-cv-09437-MMM-FMO, 2013 WL 815975, at *5 (C.D. Cal. Mar. 5, 2013) (collecting cases).

As the Ninth Circuit has recognized, fraudulent joinder is typically used to assert procedural defenses and immunities that are distinct from the underlying merits of the claim. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998); *Grancare, LLC*, 889 F.3d at 548–49 ("A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.") (collecting cases). For example, a successful statute of limitation challenge, *see Ritchey*, 139 F.3d at 1320 and *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), a state law privilege, *see McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987), or other inability to hold the defendant liable, *see United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002), are instances in which fraudulent joinder may be established because those defenses render the claim "impossible."

## II. Discussion

In removing this action to this Court, Defendants asserted that removal was proper because Defendants Holton and McCullah are sham defendants and that, without their joinder, this Court has diversity jurisdiction. Plaintiff now seeks remand of this action, arguing that Defendants Holton and McCullah are proper defendants and, as such, there is not complete diversity of the parties. Plaintiff's Complaint brings claims of Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") against both Defendants Holton and McCullah.[3] (Compl. at 17–19.) Defendants argue that these claims are preempted by the Workers' Compensation Act ("WCA") and that both the IIED and NIED claims fail as a matter of

---

[3] Defendant Raising Cane's is also a defendant to these claims, but as the issue on Plaintiff's Motion to Remand is whether Defendants Hilton and McCullah are proper defendants, the Court focuses only on those claims as they relate to those Defendants.

5

law as to both Defendants Holton and McCullah.  The Court addresses these arguments in turn.

### A. Workers Compensation Act

In California, the WCA is typically "the sole and exclusive remedy for the employee" for all injuries "arising out of and in the course of the employment." Cal. Lab. Code §§ 3600(a), 3602(a); *see also Livitsanos v. Super. Ct.*, 2 Cal. 4th 744, 752 (1992) ("[T]he proposition that intentional or egregious employer conduct is necessarily outside the scope of the workers' compensation scheme is erroneous . . . . Even intentional 'misconduct' may constitute a 'normal part of the employment relationship.'"); *Jones v. R.J. Donovan Corr. Facility*, 152 Cal. App. 4th 1367, 1382 (2007) (holding that a claim of infliction of emotional distress based on alleged discrimination and harassment was void even if the conduct complained about could be characterized as "intentional, unfair or outrageous" because it was covered by the workers' compensation exclusivity provisions).  There are two limited exceptions to WCA preemption: (1) where the employer's conduct contravenes a fundamental public policy and (2) where the conduct in question "exceeds the risks inherent in the employment relationship." *Thomas v. Starz Ent. LLC*, No. 2:15-cv-09239-CAS-MRWx, 2016 WL 844799, at *8 (C.D. Cal. Feb. 29, 2016).

The first exception does not apply here.  The California Supreme Court has clearly stated that the fundamental public policy exception is only applicable in actions for wrongful discharge. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 902–03 (2008).  Such actions "can only be asserted against <u>an employer</u>." *Id.* at 900 (emphasis in original).  As such, Plaintiff's claims against Defendants Holton and McCullah cannot utilize the fundamental public policy exception.

The second exception to WCA preemption applies where conduct exceeds the risk in the employment relationship.  In answering whether conduct is inherent in the employment relationship or exceeds it, "the critical issue is whether the alleged acts, bereft of their motivation, can ever be viewed as a normal aspect of the employer

relationship . . . ." *Vacanti v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 822 (2001) (internal citations and quotation marks omitted). "Where the tortious act is not closely connected to a normal employer or insurer action, it is not subject to exclusivity." *Id.* (internal citations omitted).

Plaintiff claims that Holton and McCullah repeatedly requested specific paperwork, would not permit Plaintiff to return to work until specific information was provided, retaliated against Plaintiff for his arrest, and retaliated against Plaintiff when he complained about these practices. Plaintiff also asserts that this conduct violated California Labor Code section 432.7(a)(1) as Defendants improperly utilized information relating to an arrest for which Plaintiff had not been convicted to suspend and ultimately terminate Plaintiff's employment. It is not clear that this is conduct properly considered to be inherent in the employment relationship.

Both Plaintiff and Defendants cite cases that have found specific alleged conduct to be within or beyond the employment relationship. But these cases are of limited assistance due to the distinctions in the conduct at issue. For example, Defendants cite the California Supreme Court cases of *Miklosy* and *Shoemaker v. Myers*, 52 Cal. 3d 1 (1990), but in both cases the court only stated that whistleblower retaliation was a risk inherent in the employment relationship. Similarly, Plaintiff's Reply cites *Fretland v. County of Humboldt*, 69 Cal. App. 4th 1478 (1999), which found that "work-related injury discrimination is not a normal risk of the compensation bargain." *Id.* at 1492. While cases in the injury discrimination context are somewhat more analogous to the present case than whistleblower retaliation, cases such as *Fretland* are readily distinguished by the fact that the plaintiffs there had viable FEHA claims, which are more commonly recognized as not precluded by WCA.[4] *See id.* at 1485 ("section 132a does not provide an exclusive remedy and does not preclude an

---

[4] The Complaint alleges "unlawful harassment, discrimination, and retaliation towards Plaintiff" by Defendants. (Compl. ¶ 123.) This may be a reference to FEHA, but Plaintiff does not bring any claims under FEHA in the current operative Complaint.

employee from pursuing FEHA and common law wrongful discharge remedies." (quoting *City of Moorpark v. Superior Ct.*, 18 Cal. 4th 1143, 1158 (1998)); *see also Light v. Cal. Dep't of Parks and Rec.*, 14 Cal. App. 5th 75, 97 (2017) ("claims for intentional infliction of emotional distress in the employment context may be asserted where the actionable conduct also forms the basis for a FEHA violation."). Plaintiff's claims are thus distinguishable from the cases cited by both parties.

The lack of directly applicable cases leaves the Court without clear guidance about whether the WCA preempts Plaintiff's claims. Faced with ambiguities in California law around WCA preemption and what is inherent in the employment relationship, as well as the "heavily fact intensive" inquiry that is WCA preemption, other district courts return to the basic standard for fraudulent joinder. *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1181 (N.D. Cal. 2003). "[D]istrict courts must resolve ambiguities in the controlling state law in favor of the non-removing party when evaluating fraudulent joinder." *Id.*; *see Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1055 (C.D. Cal. 2013); *see also Theno v. Abbott Laboratories*, No. 20-cv-04765-DMG-PVCx, 2020 WL 5991617, at *4 (C.D. Cal. 2020). The Court does the same here.

Defendants have not met their burden to show that Plaintiff's IIED and NIED claims against Defendants Holton and McCullah are clearly preempted by the WCA. While some of the conduct alleged may fall within the scope of the risks inherent in employment, "[t]here is no bright line test in determining what behavior is part of the employment relationship or reasonably encompassed within the compensation bargain." *Calero*, 271 F. Supp. 2d at 1181. Thus, where, as here, there is some ambiguity about whether conduct is within the employment relationship and that question is raised in connection with fraudulent joinder, that question must be resolved in Plaintiff's favor in connection with a motion to remand. The Court thus declines to find at this point that Plaintiff's claims against Defendants Holton and McCullah are preempted by the WCA.

**B. IIED Claims**

Defendants also argue that Plaintiff's claims against Defendants Holton and McCullah fail as a matter of law. For Plaintiff to state a claim for IIED under California law, a plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal citations and quotation marks omitted). Defendants contend that Holton and McCullah's actions as described in Plaintiff's Complaint cannot be considered outrageous conduct and that they are simple "personnel management actions" which fail to state an IIED claim as a matter of law. (Remand Opp'n at 14–15.)

Examining the specific conduct identified in the Complaint, Defendants' actions in placing Plaintiff on leave and ultimately terminating him are core personnel management actions, regardless of whether they had improper or retaliatory reasons for doing so. *See Walker v. Boeing Corp.,* 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002). While Defendants' demand that Plaintiff provide information regarding his arrest in a specific form was potentially unnecessary and retaliatory, such requests for documentation are also appropriately considered personnel management actions as well.[5] *See Villalobos v. Costco Wholesale Corp.*, No. 2:23-cv-00622-DJC-JDP, 2023 WL 5108499, at *5 (E.D. Cal. Aug. 9, 2023). Plaintiff argues that cases such as *Miller v. Department of Corr.*, 36 Cal. 4th 446 (2005), and *Roby v. McKesson Corp.*, 47 Cal. 4th

---

[5] Plaintiff suggests that Defendants were "legally prohibited from seeking" the information concerning Plaintiff's arrest by section 432.7. (Reply at 9.) This is untrue. Section 432.7(a)(1) prohibits employers from seeking or utilizing records of arrest or detention that did not result in a conviction, but also specifically allows employers to ask an employee "about an arrest for which the employee or applicant is out on bail or on their own recognizance pending trial." This does not mean that this information could be utilized as a factor in determining a condition of employment. *See Pitman v. City of Oakland*, 197 Cal. App. 3d 1037, 1044 (1988) (noting that while section 432.7 permits employers to inquire about an arrest, it still does not permit usage of that information for disciplinary purposes). But simply requesting information from Plaintiff about his arrest is expressly permitted by section 432.7.

686, 708 (2009), have permitted IIED claims based on personnel decisions. But these cases found that the actions in question "establish[ed] a widespread pattern of bias" that had "a secondary effect of communicating a hostile message." *Roby*, 47 Cal. 4th at 709. The factual allegations at issue here do not support such a finding of a widespread pattern of bias such that a hostile message is created, and these cases can be invoked.

However, the question for purposes of fraudulent joinder is not whether the Court would grant a motion to dismiss under Rule 12(b)(6). Defendants are not moving to dismiss these claims based on procedural defenses and immunities and thus have a "heavy burden" to prove that Defendants Hilton and McCullah were fraudulently joined. They have not carried this burden by only establishing that Plaintiff's allegations are insufficient as currently pled. *See Grancare, LLC*, 889 F.3d at 548. The current allegations in the Complaint may only establish that Defendants Hilton and McCullah were engaged in personnel management actions. But this does not show that Plaintiff will ultimately be unable to state IIED claims against Defendants Hilton and McCullah. *See Grancare*, 889 F.3d at 548.

Accordingly, the Court finds that Defendants have not met their burden to show fraudulent joinder.[6] As such, Plaintiff's Motion to Remand must be granted as there is not complete diversity of the parties. 28 U.S.C. § 1447(c); *see* 28 U.S.C. § 1332(a).

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Remand (ECF No. 6) is GRANTED.

---

[6] Given that Defendants have failed to meet their burden as to Plaintiff's IIED claims against Defendants Hilton and McCullah, the Court need not reach the arguments regarding the sufficiency of the NIED claims. However, it seems likely that any failure of Plaintiff to state NIED claims against Defendants Hilton and McCullah also does not indicate Plaintiff is unable to state such claims. While the Complaint may lack specific allegations of negligence and fail to establish that Defendants Hilton and McCullah owed duties to Plaintiff, Defendants have not shown that it would be impossible for Plaintiff to cure these issues.

2. Defendants' Motion to Compel Arbitration (ECF No. 7) is DENIED AS MOOT.
3. The Clerk of Court is directed to remand this case to the Superior Court of California, County of Sacramento, and close this case.

IT IS SO ORDERED.

Dated:  **September 10, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

11